**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| YEVON McMILLIAN, | : | |
| Plaintiff, | : | |
| vs. | : | CA 12-0108-C |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | | |
| | : | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 19 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the parties' arguments at the September 26, 2012 hearing before the undersigned, it is determined that the Commissioner's decision denying plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

_____

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of
(Continued)

Plaintiff alleges disability due to hypertension, diabetes mellitus, and depression.

The Administrative Law Judge (ALJ) made the following relevant findings:

      **1.      The claimant last met the insured status requirements of the Social Security Act on September 30, 2009.**

      **2.      The claimant did not engage in substantial gainful activity during the period from alleged onset date of September 26, 2009 through her date last insured of September 30, 2009 (20 CFR 404.1571 *et seq.*).**

      **3.      Through the date last insured, the claimant had the following severe impairments: hypertension, diabetes mellitus and depression (20 CFR 404.1520(c)).**

      **4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525 and 404.1526).**

The claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listing 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria were satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant had moderate restriction. In social functioning, the claimant had moderate difficulties. With regard to concentration, persistence or pace, the claimant had moderate difficulties. As for episodes of decompensation, the claimant had experienced no episodes of decompensation, which have been of extended duration.

.     .     .

---

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.     After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Light work is defined in 20 CFR 404.1567(b) as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may involve a good deal of walking or standing, usually 6 hours out of 8 hours, or when it involves sitting, generally 2 hours out of 8 hours, may involve pushing and/or pulling with arm or leg controls. Additionally, the work should involv[e]  no climbing of ropes, ladders, or scaffolds; no more than occasional bending, stooping, crouching, crawling or kneeling; no work at unprotected heights; no work with hazardous machinery; no operating of motor vehicles and no more than occasional contact with the general public.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical

evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

At the time the claimant filed her current application she completed a Disability Report-Adult and reported she had high blood pressure, diabetes, anxiety, depression, high cholesterol, arthritis and rapid heartbeat. She stopped working on July 20, 2007. She had past work as an inspector and multiple jobs at a sewing factory [].

The claimant also completed a Function Report-Adult and stated that she lived in a house with her husband. During the day, she did some chores, but slept a lot due to the medications. She had some trouble with personal care, putting on her shoes and shortness of breath. She did not drive, but shopped for groceries and personal items. She was able to count change and handle money accounts. Her flowers in the yard used to be her hobby, but no more. She went to church sometimes, but did not like being around people. Her ability to lift, squat, bend stand, reach, walk, sit, kneel, talk, stair climb, see, memory, complete tasks, concentrate, understand, follow instructions, and use hands had been affected by her condition. The claimant reported she could not handle stress, had physical limitations, and had memory problems, heart palpitations, trouble concentrating, problems completing tasks, weakness, numbness in her fingers, sleepiness and side effects from her medications.

The claimant testified she was . . .  disabled due to "sugar and blood pressure" and depression. She testified . . . [s]he had problems with functioning and with her concentration.

The undersigned has considered the evidence, particularly with regard to two issues[:] the evidence that was considered in the administrative law judge decision issued on September 25, 2009, in which Res Judicata applies, and the pertinent evidence with regard to the claimant's date last insured of September 30, 2009.

The evidence in the prior decision, which is presented for historical reference only as Res Judicata applies, reflects the claimant was treated at Franklin Primary Health Center from 2002 to 2007 for various complaints, some of which included hypertension, diabetes mellitus, . . . anxiety and depression.

.     .     .

[Medical evidence pertinent to the time period in this decision reflects that] Ellen N. Eno, Ph.D. with the State Agency completed a Psychiatric Review Technique form on January 19, 2010 and considered Listing 12.04-Affective Disorder and 12.06-Anxiety Related Disorder and opined there was insufficient evidence to make a decision. Dr. Eno noted the claimant's treatment history from Dr. Wood from January 13, 2009, to June 8, 2009, for anxiety and depression; and treatment from Waynesboro Family

Medicine from October 23, 2009, to November 13, 2009, for anxiety and history of depression [].

Records from West Alabama Mental Health Center reflect the claimant presented on January 19, 2010, and was assessed with depressive disorder, not otherwise specified, and rule out anxiety disorder, not otherwise specified. The claimant was given a Global Assessment Functioning Score (GAF) of 50.[2] On February 2, 2010, she presented and was noted to be pleasant and cooperative. On March 23, 2010, the claimant was noted to have normal affect and was oriented to person, place, time and situation. She was noted to have moderate symptoms. On April 8, 2010, the claimant was diagnosed with major depressive disorder, recurrent. She returned on April 19, 2010, and was given a GAF of 45. On May 20, 2010, the claimant reported being upset and going into a rage. On June 22, 2010, the claimant reported homicidal thoughts and was counseled on appropriate and inappropriate responses to her emotions. On July 8, 2010, the claimant was noted to have restricted affect and some hallucinations. On July 22, 2010, the claimant reported nightmares, had a restricted affect and reported she saw people in shadows [].

.    .    .

Updated records from West Alabama Mental Health reflect the claimant was seen on September 29, 2010, for counseling and treatment for depression; on October 25, 2010, for counseling for depression with frequent outbursts; on November 8, 2010, when she reported voices, suicidal thoughts and feelings of worthlessness; on November 23, 2010, for counseling; on January 5, 2011 for depression, anxiety and hallucinations; on February 7, 2011, for major depressive disorder, and on February 14, 2011, for problems with sleeping, appetite disturbance and socially withdrawn [].

.    .    .

On March 3, 2011, records from West Alabama Mental Health reflect[] the claimant had major depressive disorder. On March 14, 2011, the claimant continued to report persistence (sic) anxiety, depression and hallucinations. On April 20, 2011, the claimant was again seen for individual counseling.

---

[2]    "According to the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, a Global Assessment of Functioning of between 41 and 50 represents: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR serious impairment[s] in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." (Tr. 27, at n.3 (emphasis in original).)

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The issue before the undersigned administrative law judge is to determine if the evidence is convincing that the claimant is disabled from the date of her amended onset date of September 26, 2009, to September 30, 2009, the claimant's date last insured.

In this particular case, within the parameters that are set out above, the undersigned has considered the evidence and finds that the evidence reflects, for the pertinent time period, the claimant had the ability to perform within the residual functional capacity as set out in the decision. The evidence reflects the claimant did not have such severe impairments that she was not able to perform work activity.

The prior administrative law judge decision that was issued on September 25, 2009, found that the claimant was able to perform her past relevant work. Likewise, the medical information before the claimant's date last insured of September 30, 2009, does not reflect a decrease in her functional ability or marked limitations either physical or mental.[3] Essentially, the information found in Exhibit 14 reflects some medical evidence that was not considered in her earlier decision as well as medical evidence that was received up to her date last insured.

.     .     .

Unfortunately, the subsequent evidence following the claimant's date last insured reflects a progressive worsening of mental impairments and a decrease in the claimant's physical impairments. However, as the claimant has filed for disability insurance benefits, which requires an insured status, as noted in Sections [] 216(i) and 223 of the Social Security Act, the claimant must establish disability on or before that date in order to be entitled to benefits. In this particular case, the evidence does not reflect a disability before her date last insured. Although the subsequent evidence does reflect a progressive worsening of impairments that is not the issue in this particular case and the medical evidence of record after her date lase insured is not relevant to this particular claim for disability.

---

[3]     The primary problem with this conclusory analysis is that the prior ALJ not only did not find plaintiff's depression to be a severe impairment, he did not analyze any of the evidence of record regarding her depression. (*See* Tr. 53-62.)

>6.     Through the date last insured, the claimant was capable of performing past relevant work as a wire stripper (light/unskilled) (DOT#691.685-018) and trimmer (light/unskilled) (DOT#789.687-050). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
>The vocational expert testified the claimant could perform her past work activity. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed.
>
>7.     The claimant was not under a disability, as defined in the Social Security Act, at any time from September 26, 2009, the alleged onset date, through September 30, 2009, the date last insured (20 CFR 404.1520(f)).

(Tr. 23-24, 24-25, 27 & 28-29 (internal citations omitted but footnote retained; emphasis in original).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In making a social security disability determination, the Commissioner employs a five-step sequential evaluation process. *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of proof at each of the first four steps of the process, which are: (1) whether she is currently performing substantial gainful activity; (2) whether she has severe impairments; (3) whether her severe impairments meet or medically equal a listed impairment; and (4) whether she can perform her past relevant work. *See id*. at 1237-1239. It is only at the fifth step of the sequential evaluation process that the burden shifts to the Commissioner, who must establish that there are a significant number of jobs in the national economy that the claimant can perform. *See id* at 1239-1240.

An ALJ's determination of the claimant's residual functional capacity ("RFC") "informs both steps four and five of the evaluation [process]." *Snyder v. Commissioner of*

Case 1:12-cv-00108-C   Document 20   Filed 10/04/12   Page 8 of 15

*Social* Security, 330 Fed.Appx. 843, 849, 2009 WL 1492653, *5 (11th Cir. May 29, 2009).

For instance, at the fourth step of the sequential evaluation process—the step at which

the ALJ in this case concluded his analysis—"the claimant's RFC is compared with the

physical and mental demands of the claimant's past relevant work[,]" and "[i]f it is

found that the claimant can still perform her past relevant work, the claimant is not

disabled." *Klawinski v. Commissioner of Social Security,* 391 Fed.Appx. 772, 774, 2010 WL

3069718, *2 (11th Cir. Aug. 6, 2010) (citing 20 C.F.R. § 404.1520(f)); *see also Hennes v.*

*Commissioner of Social Security Administration,* 130 Fed.Appx. 343, 345, 2005 WL 1027242,

*2 (11th Cir. May 3, 2005) ("[T]he ALJ—at the fourth-step of this evaluation process—

must assess the claimant's RFC and determine whether the claimant can perform her

past relevant work, despite her impairment[s]. If the claimant can return to her past

relevant work, she is not disabled." (internal citations omitted)).[4]

> The [RFC] is an assessment, based upon all of the relevant evidence, of a
> claimant's remaining ability to do work despite [her] impairments. In
> evaluating a claimant's RFC, the ALJ considers the claimant's ability to
> meet the physical, mental, sensory, and other requirements of work.

*Ehrisman v. Astrue*, 377 Fed.Appx. 917, 919, 2010 WL 1780248, *1 (11th Cir. May 5, 2010)

(internal quotation marks and citations omitted).  "To support a conclusion that the

claimant is able to return to [her] past relevant work, the ALJ must consider all the

---

[4]      Obviously, this RFC determination must be supported by substantial evidence.
*Cf. Moreno v. Astrue,* 366 Fed.Appx. 23, 28, 2010 WL 476697, *4 (11th Cir. Feb. 12, 2010) ("The
present inquiry concerns the fourth step of the sequential evaluation process [and] whether []
substantial evidence supports the ALJ's finding that Moreno could perform her past relevant
work."), *cert. denied,* ___ U.S. ___, 131 S.Ct. 97, 178 L.Ed.2d 61 (2010). Substantial evidence is
defined as more than a scintilla and means such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28
L.Ed.2d 842 (1971).  "In determining whether substantial evidence exists, we must view the
record as a whole, taking into account evidence favorable as well as unfavorable to the
[Commissioner's] decision." *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). This Court's
review of the Commissioner's application of legal principles, however, is plenary. *Walker v.
Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

duties of that work and evaluate the claimant's ability to perform them in spite of [her] impairments." *Battle v. Astrue,* 243 Fed.Appx. 514, 522, 2007 WL 2193546, *6 (11th Cir. Aug. 1, 2007). While it is certainly true that the testimony of a vocational expert ("VE") is not required in determining whether a claimant can perform her past relevant work, *see Lucas v. Sullivan,* 918 F.2d 1567, 1573 n.2 (11th Cir. 1990), "the regulations provide that 'the services of vocational experts or vocational specialists' may be used in making this determination because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.'" *Hennes, supra,* 130 Fed.Appx. at 346 (all citations omitted, including internal citations); *see also Battle, supra,* 243 Fed.Appx. at 522 ("The regulations permit an ALJ to consider a VE's opinion when making this determination."). When an ALJ charts the path of considering a VE's testimony at the fourth step, as the ALJ admittedly has done in this case (*see* Tr. 29 ("**Through the date last insured, the claimant was capable of performing past relevant work as a wire stripper . . . and trimmer . . . . This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity . . . .** The vocational expert testified the claimant could perform her past work activity. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed.")), "'[i]n order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Battle, supra,* 243 Fed.Appx. at 522, quoting *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002).

In this case, the plaintiff contends that the Commissioner erred in finding that she can perform her past relevant work as a wire stripper and trimmer since the hypothetical question upon which he relied in making this determination was incomplete (*see* Doc. 12, at 3), specifically because the hypothetical question did not include the moderate limitations in concentration, persistence, and pace found by the ALJ at the third step of the sequential evaluation process (*id.* at 6).[5] The foregoing analysis provides an appropriate transition into consideration of the claimant's issue, as does the Eleventh Circuit's recognition in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (2011)[6] that requiring a hypothetical question posed to a VE to specifically account for limitations in concentration, persistence, and pace identified in the Psychiatric Review Technique Form ("PTRF")—or its mode of analysis—does not improperly conflate the PRT inquiry at steps two and three of the sequential evaluation process with the RFC inquiry at steps four and five. *See id.* at 1180. Indeed, "[t]hough the PRT and RFC evaluations are undeniably distinct, nothing precludes the ALJ from

---

[5]      The ALJ posed the following relevant hypothetical to the VE in this case: "I'd like you to assume a hypothetical person, same age, same education, same past work as the claimant and further assume that this person is limited to light, unskilled work that involves no climbing of ropes, ladders or scaffolds. No more than occasional bending, stooping[,] crouching or kneeling. No work at unprotected heights. No work with hazardous machinery. No operating of motor vehicles and no more than occasional contact with the general public." (Tr. 45-46.) In response to this hypothetical question, the VE testified that the hypothetical individual could perform plaintiff's past work as a wire stripper and trimmer. (*Id.* at 46.)

The ALJ's third hypothetical question posed to the VE is also relevant to the issue plaintiff raises in this case inasmuch as the third hypothetical question asked the VE to assume the same individual with the same limitations as set out in the first hypothetical but added the further assumption that the individual "has a marked impairment in [her] ability to sustain concentration, persistence or pace." (*Id.*) In response to this hypothetical question, the VE responded that the individual could not perform any past work or, indeed, any work in the national economy. (*Id.* at 46-47.)

[6]      In bringing this issue to the Court's attention, plaintiff heavily relies upon the *Winschel* case. (*See* Doc. 12, at 8-9.)

considering the results of the former in his determination of the latter." *Id.* (internal citation omitted), citing *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3rd Cir. 2004) ("'While [Social Security Ruling] 96-8p does state that the [PRT] findings are "not an RFC assessment" and that step four requires a "more detailed assessment," it does not follow that the findings on the [PRT] play no role in steps four and five, and [Social Security Ruling] 96-8p contains no such prohibition.'"). Thus, in considering issues like the one raised by plaintiff in the instant case, the Eleventh Circuit in *Winschel* provides additional guidance, as follows:

> Other circuits have [] rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or ***unskilled work***. But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

*Id.; see also Syed v. Commissioner of Social Security,* 441 Fed.Appx. 632, 635, 2011 WL 4425309, *3 (11th Cir. Sept. 22, 2011) ("[A]lthough the hypothetical question posed by the ALJ to the VE did not expressly include Syed's impairments, it implicitly accounted for them, and thus, was not improper. As the record shows, the hypothetical included that there were impairments, and that the individual would require a low-stress work environment. Indeed, the medical evidence demonstrated that Syed could engage in simple, routine tasks and unskilled work despite any limitations, as he was not significantly limited in his ability to complete simple work-like procedures. The medical evidence also showed that Syed understood and followed specific, multi-step instructions, and was cooperative and responsive. Thus, Syed was only moderately limited in his work capabilities, could accept instruction and criticism, and was not

significantly limited in his ability to complete simple work-like procedures. Because simple, unskilled work sufficiently accounted for limitations in concentration, persistence, and pace, as set forth in *Winschel*, the hypothetical posed adequately accounted for Syed's limitations as they were implicitly included."); *Kinnard v. Commissioner of Social Security,* 426 Fed.Appx. 835, 837, 2011 WL 1849319, *1 (11th Cir. May 17, 2011) (hypothetical question posed to the VE found to be complete where the ALJ asked the VE "to determine what work could be performed by a claimant who was mildly limited in his ability to understand, remember, and execute complex instructions; mildly to moderately limited in his ability to make judgments on complex work-related decisions; mildly limited in his ability to interact appropriately with the public, supervisors, and coworkers; and mildly limited in his ability to respond appropriate[ly] to changes in a routine work setting."); *Jarrett v. Commissioner of Social Security,* 422 Fed.Appx. 869, 871, 2011 WL 1378108, *2 (11th Cir. Apr. 11, 2011) ("In this case, the ALJ's hypothetical questions adequately accounted for Jarrett's impairment in concentration, persistence, and pace. In one of the hypotheticals, the ALJ asked the VE to assume an individual with Jarrett's age, education, and work experience who could only 'understand, remember, [and] carry-out simple tasks and concentrate for brief periods of time.' By including that Jarrett had limitations in her ability to concentrate, this hypothetical questions adequately accounted for the ALJ's finding that Jarrett had moderate difficulties in concentration, persistence, and pace.").

This Court is unable to find that the ALJ's hypothetical questions accounted for McMillian's moderate limitations in concentration, persistence and pace.[7] In this regard,

---

[7] The ALJ specifically determined at step three of the sequential evaluation process that plaintiff had moderate difficulties with regard to concentration, persistence and pace. In (Continued)

although the first hypothetical posed to the VE can be read to account for plaintiff's moderate difficulties in social functioning, by inclusion of language that the hypothetical individual was to have "no more than occasional contact with the general public[,]" restricting the hypothetical question to unskilled light work did not account for plaintiff's moderate limitations in concentration, persistence, and pace. This conclusion is reached not solely because the Eleventh Circuit in *Winschel, supra,* joined other circuits in rejecting the argument that an ALJ accounts "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work[,]" 631 F.3d at 1180, but, as well, because the ALJ in this particular case recognized that limiting the hypothetical question to unskilled work does not account for limitations in concentration, persistence, and pace inasmuch as in the third hypothetical question he posed to the VE, the ALJ made the same assumptions contained in the first hypothetical (including the limitation to light unskilled work) only to add the additional assumption that the individual would have a marked impairment in her ability to sustain concentration, persistence or pace (*see* Tr. 46). Because the ALJ in this case has implicitly, if not explicitly, admitted that a limitation in maintaining concentration, persistence and pace is an additional assumption relevant for consideration by a VE, it is clear to the undersigned that the ALJ should have included in the hypothetical question posed to the VE the moderate limitations in concentration, persistence, and pace that he explicitly found at step three of the sequential evaluation process. This is particularly true since the ALJ gave no indication that the medical evidence of record suggested that

---

addition, the ALJ also specifically determined that plaintiff had a moderate restriction in activities of daily living and moderate difficulties in social functioning. (Tr. 24.)

McMillian's ability to work was unaffected by this limitation, "nor did he otherwise implicitly account for this limitation in the hypothetical." *Winschel,* 631 F.3d at 1181. As previously indicated, the hypothetical assumptions that the individual can perform light unskilled work and should have only occasional contact with the general public do not implicitly account for McMillian's admitted moderate limitations in concentration, persistence, and pace. More importantly, nothing the ALJ relayed in his decision about the medical evidence in this case demonstrates that the claimant retains the ability to perform unskilled work despite her moderate difficulties in maintaining concentration, persistence, and pace. Indeed, there is no medical evidence to which the ALJ refers that shows, for instance, that McMillian could understand and follow specific, multi-step instructions, while being cooperative and responsive, as was the situation in *Syed, supra,* or that shows that "despite a moderate degree of limitation in maintaining concentration, persistence, and pace, [plaintiff] was 'able to follow simple instructions, complete simple tasks, make decisions, avoid hazards, and relate adequately to function in the workplace[,]'" as in *Jarrett, supra*.[8]

In light of the foregoing, the undersigned concludes that because the ALJ's relevant hypothetical question neither explicitly nor implicitly accounted for plaintiff's moderate limitations/impairments in concentration, persistence, and pace, the VE's

---

[8]     While the ALJ in this case made a point of stating that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)[,]" (Tr. 24), he makes no such detailed assessment as that would have required him to "address the impact of Plaintiff's moderate limitations in concentration, persistence, or pace on [her] ability to 'understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.'" *Brunson v. Astrue,* 850 F.Supp.2d 1293, 1303 (M.D. Fla. 2011), quoting SSR 96-8p. Simply put, the ALJ did not perform the relevant analysis he identified as crucial in this case.

testimony is not "substantial evidence" and cannot support the ALJ's conclusion that McMillian could perform her past relevant work as a wire stripper and trimmer through the date last insured under the Social Security Act. *Compare Winschel, supra,* 631 F.3d at 1181 *with Battle, supra,* 243 Fed.Appx. at 522 (in step four case, "'[i]n order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'").

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala  v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 4th day of October, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**